At this time, we'll hear Smith v. The Metropolitan Museum of Art. Good morning. Good morning, Your Honor. May it please the Court, Rudy Dermosropian for the appellant, James Smith. I reserve two minutes for rebuttal. We're asking the Court to respectfully reverse the decision of the lower court for three main reasons. Primarily, the settlement and release agreement that was signed by my client was rescinded on time. The statute of limitation, again, to bring in the union into the case, the lower court should not have considered that that limitation has expired. And we also believe that the dismissal of the case was premature, considering that the union did not have a chance to appear, answer, or submit any paperwork with regards to the motion into the lower court. And a lot of the answers that we still don't have questions to, at least we have beliefs as to the answers, but we don't have them in the record or in the hands of the union. There was another aspect to the motion to dismiss which the lower court did not address, which pertains to the discrimination aspect of the case. There has been case law, numerous cases in this district and in this circuit, that actually says specifically that the union is the exclusive representative of the union member of the employee. In this case, after the grievance was filed, the union did appear in the grievance. They took it throughout the steps one, two, three, so on and so forth, and eventually they appealed to arbitration. Just before arbitration, a deal was made. A settlement and release agreement was signed and provided for a seven-day revocation period. Before the expiration of the seven days- How was revocation to be effected? Well, the specific language of the agreement says- The specific language, and I have it in the book, says that I think it refers to him as Smith. His last name should notify the museum of his decision to revoke. My point is- Within- Within seven days. Within seven days? Seven days. Prior to the seven days, my client did contact the attorney assigned by the union, which was representing- It was still his attorney. I'm sorry? The attorney was assigned by the union, but it was your client's attorney. Yes, that's correct. So he did contact Ms. Castro. He contacted that person, and that person did not notify- That is correct. That attorney actually did represent to Mr. Smith that they're going to quote, okay, I'll take care of it. If we look at parallel cases like the Caputo case, where there were similar facts where the union representative did represent, that we'll take care of. When did your client get the check for the six and a half months of wages? Before or after the seven days had elapsed? After. Wouldn't that have told him that the museum was not notified? Well, I wouldn't- People don't send checks if the deal is off. That is correct, but that could also be just a mistake or a violation of the agreement or something else. It does not necessarily jump to the conclusion that the union did not do what they were supposed to do. In fact, in a declaration submitted by the museum from Ms. Voss, she does state in her first declaration that she did not receive any notification from the plaintiff directly. They don't say that they never received anything from the union. I think that's an important distinction in this case, because we still don't know whether the union did, in fact, notify the museum on behalf of the plaintiff. I don't think the reading of the agreement, the settlement agreement, specifically requires the plaintiff personally to do it, as long as his legal representative or his union representative did so on his behalf. She did represent to him that she will take care of it, and the Caputo case did actually examine that similar scenario, where the union rep did represent and there was a reliance on their representation, and the court did eventually feel that there was a breach of a duty. Regarding the time limitation, which I believe one of the questions your Honor asked, the museum argues that at the very least, plaintiff should have been aware of the breach in December 2015 during a phone conversation with Ms. Voss and myself. That phone conversation is taken out of context, and I think, not to take my word for it, only the notes that Ms. Voss took do not actually say the museum is not aware. She was referring to her knowledge at the moment. This was not a pre-scheduled conversation. It was on the spot, and in support of that, her declaration- The museum has never categorically said that they did not get the notice. They said specifically they did not get it from the plaintiff. They never said they did not get it from the union in their paperwork. Well, let's parse this out. It's not the union. It would have come from the attorney for your client. Which is what I mean. The attorney assigned by the union on behalf of them. You think it's possible that the museum was slicing things very thin, and claimed that they never heard from your client because the only person they heard from is your client's counsel? Possible. I cannot answer that question on their behalf, but possible. There was a phone conversation directly from my client to the museum, which does not satisfy the written requirement. We can see to that. But there was communication directly through the phone with the general counsel, which also coincidentally did not submit a declaration. But we agree that it was not a written correspondence directly from plaintiff to the museum. The first time that Mr. Smith could have become aware of the breach or alleged breach of the museum is when they specifically said so in their papers, saying that we don't have anything, we don't receive anything. That was the trigger which caused us to bring the union into the case. And we did that within roughly about 30 days after we got the service of the papers. So we believe that the time limitation to bring in the union should not have expired. As far as the merits of the breach of duty of fair representation, I refer back to the Caputo case, which dealt with a very similar scenario. And in that case, there was, again, like I said before, similarly there was representation, and they promised they would take care of it, but they never did. And that was considered also to be a breach. With regards to the- Did your client receive the health benefit that was consideration for the release? The only thing to my knowledge that he received was a check, which he never deposited. That's the only thing as far as I'm concerned, as far as I know. That's the only thing. And specifically, as I said before, the declaration submitted by the museum do not specifically address the point that we're trying to make, which is that the union should have acted on behalf of the plaintiff as his representative. They don't specifically deny it. They don't specifically address it. The other key point in this case is that the agreement, before I say that, the museum alleges that the only person that should have become aware, that should have received notice, excuse me, of the revocation was Ms. Voss. But the agreement that my client signed does not say that. And, in fact, it doesn't even say to whom or where he should send any notification if we're going to consider that it was only him and just him who was to send the- Ms. Voss is in the general counsel's office? Ms. Voss is the assistant counsel for the museum. I believe my time is up. Thank you, Your Honor. And we'll hear you then. Good morning, Your Honors. May it please the Court, my name is Clifford Atlas with the law firm Jackson-Lewis PC, representing the Appalachian Metropolitan Museum of Art and the Doe Employees and Corporations. Has the museum ever said categorically that it did not receive a notice of revocation either from the plaintiff or from plaintiff's counsel? Plaintiff did-the museum stated clearly that it did not receive a revocation. It said it did not receive it from plaintiff, whether that's from the plaintiff or anybody on behalf of plaintiff. We didn't parse that. But plaintiff did not have counsel at that time. Plaintiff's-the attorney for the union was representing the union at the arbitration, and the obligation of the union is set forth in our brief. I thought the union assigned counsel to this plaintiff. I do not believe that that counsel was representing the plaintiff personally. The counsel was there representing the union's interests is my understanding of the way that worked. So- Go ahead. I'm sorry. So if the plaintiff told the lawyer for the union that he wished to revoke, please tell the museum, and he did, then the museum could still say and perhaps does say we never heard from the plaintiff, he himself. To be clear, it's the museum's position that nobody ever conveyed a revocation. I know that's your position, but is that the evidence? The evidence that we have at this time is the plaintiff admits that he was required to notify the museum. He admits that he did not notify the museum. He was pro se during the period of time in which that notice should have been given if he wished to revoke. He had to notify the museum. He managed to call Sharon Cott, the general counsel of the museum, according to the plaintiff. Remember, we're just taking the allegations and the complaint. He could have at any time notified the museum in writing. It's not a complicated thing to do, and it's not an abnormal requirement in a release to say, okay, the revocation needs to go to the party that's involved in the agreement. That's not the union. That's the museum. The museum is the releasee in the agreement. So if he just told the union and said, if he just told the union lawyer and said, I want to revoke, please do that for me, and he did, that so far as the museum is concerned would not have been an effective revocation. That would not have been an effective revocation, but that's not what happened here. In fact, there's no allegation that that happened here. An oral argument, the appellant's attorney stated that he's not aware of any evidence to be able to assert or to allege that the union actually contacted the museum. And so that allegation is missing from the complaint. So the hypothetical, frankly, is inappropriate. Okay. The agreement does recite, this is at Appendix 23, there's a series of representations under Paragraph 20 about waiver. It says that he's carefully read the agreement and also that he's had time to consider and consult with an attorney. So the agreement anticipates that he'll have an attorney separate and a part of his own choosing, I take it. At least that's what it seems to imply to me. It could be any attorney he chooses to speak with. It doesn't make a representation that the union is his representative. It certainly does not, Your Honor, no. All right. Fair enough. Thank you. Thank you. In sum, there's no set of facts that the appellant can plead by which his claims against the museum will survive the release that he signed.  Thank you. Good morning, Your Honor. May it please the Court. My name is Maureen Stamp. I'm representing the union in this matter. Your Honor, you asked a question of prior counsel whether if the union had, in fact, sent the revocation, if that would have been effective. And the union believed that that would not have been effective because the tripartite agreement among the union, Mr. Smith, and the museum specifically said that Mr. Smith has to do this for himself in writing. And furthermore, the agreement said that any modification of these obligations under the agreement would have to be in writing. So if the agreement says that Mr. Smith is obligated in writing to present the revocation to the museum, the union could not have superseded that without amending the agreement. Now, it is well settled that a DFR claim against the union carries a six-month statute of limitation. Plaintiff, Mr. Smith's counsel raised the issue that the complaint was prematurely dismissed because the union had not appeared in the action. Well, that is not correct for two reasons. The union did appear in the action, the union filed a notice of appearance, and the union filed a stipulation to extend its time to respond to the complaint. That's one reason. The second reason is the way the DFR claim was pled. It was pled as a hybrid 301 claim. It is well settled in this circuit that both entities, the union and the employer, don't have to appear in order for the court to consider the hybrid 301 claim. The plaintiff just has to plead both parties, and the claim against both parties have to be considered. The museum did the heavy lifting on this case for the union. The museum brought all the defenses because it had to defend the hybrid 301 claim. And so it brought all the defenses that the union would have asserted to get this claim dismissed. And that was proper for the district court to consider the museum's motion to dismiss on the hybrid 301 claim without representation on that issue for the union. Now, the district court's dismissal of this complaint against the union itself was correct for at least two reasons. The claim is time barred. As your honor pointed out before, Mr. Smith was required to revoke the agreement in writing within seven days. He didn't do that, and he got notice when he got payment. The settlement check that the museum sent to Mr. Smith was noticed that no revocation had been received because the payment is contingent upon no receipt of revocation. So once he got notice of the payment, his time was running with respect to any DFR payment against the union. Does it matter that he hasn't cashed the check? No, it does not. It does not. It is incumbent on him to have revoked the release within seven days in writing. And once he doesn't release it, the settlement is valid and in full force and effect, and what he wants to do with the money, that's his business. Now, with respect to the substantive aspect of this claim, this circuit has held several times over that in order to bring a DFR claim against the union, the union's action has to be arbitrary, discriminatory, and in bad faith. Now, not even the complaint, the first amendment complaint that Mr. Smith submitted, where he first names the union. Does he even- What would it be if the plaintiff, who's a member of the union, told the lawyer for the union, I want to revoke this deal. And the lawyer for the union says nothing or says I'll do it, and then doesn't do it. What does it mean? That is being advanced as a possible scenario for what happened here. And you're saying there would be no basis for claiming that anything that the union did was untoward. Well, we're saying that the union had no obligation to do it. But even if the union attorney- No, but I mean there's- Even if the union, may I finish, Your Honor? You can't argue that you have no obligation to tell somebody his coat is on fire. If he says I want to revoke and please do it, and you don't say anything, you're really putting somebody in a bad position. So even if Mr. Smith told the union that and the union didn't do it, Mr. Smith was on notice as of late October 2015 that no revocation had occurred. Because- Was it then too late? I'm sorry? Was it then too late? No, Your Honor. More than seven days when he got the check? No, Your Honor, it wasn't, because he had six months from he discovered- You're saying the clock should start running. You're not dealing with whether he could or could not revoke the agreement later on. What you're talking about is the timeliness of his 301 claim. You're responding to the claim asserted against you, right? That's correct, Your Honor. And you're saying that at the very latest, once he receives the check, and the museum seems to be going forward with what the settlement requires, he's on notice that if the union has somehow stuck it to him or violated their duty of fair representation, his claim is crystallized on October 29th, which is the date of Ms. Cott's letter to him, and the six months ran because he never filed until two months or four months late, right? Well, he never filed until- I understand that. I'm saying that your only argument about the implication of the receipt of the check is about notice, not about completion of the- That's correct, Your Honor. In terms of any claims he has against the museum itself. That's correct, Your Honor. All right. Thank you. Thank you. A few points, Your Honors. First, the counsel for the museum stated that the museum's position is that they did not receive any revocation notice from or on behalf of plaintiff. The declaration, as I read before, specifically states from plaintiff. It doesn't say from or on behalf of plaintiff. Well, the union doesn't claim it sent a notice, and your client doesn't claim he sent a notice, so I think it's reasonable to presume that neither did. Well, we understand their position today. The union didn't claim that it sent a notice, did it? Well, they said this today in court, but they didn't actually have a chance to submit any answer or any papers related to the motion in the district courts for us to understand that. Which was one of the reasons I argue it was premature dismissal of the case. I think we should have had at least a limited amount of discovery to find the answer to these questions. As far as the representation of the employee, as I mentioned earlier in my argument, several cases, and I cited a couple, the Soto case and the Shiano case. Specifically says that the union is the exclusive representative of the employee and that it's common to prohibit, and that's the word that the Soto case uses, to prohibit an attorney from advocating on behalf of an employee in the grievance proceeding. So, and none of the appellees put forward an argument that the seven days revocation period, during the seven days revocation period, the union and the union- The union didn't have the right to revoke the agreement. Only Smith did under the agreement. That's page 22 of the appendix. That's their position. Right, so the union, whatever the union could or couldn't do, Smith was the only one who could revoke. But my argument- And the Met couldn't revoke either. It was Smith was the only person who could unplug this agreement, right? That's the language, word for word, from the agreement. That's correct. My argument is a little bit parallel to that, to say that the union is the exclusive representative. They speak on behalf of the union and on behalf of the employee. So when the employee communicates with the employer, he does it through the union and the attorney assigned by the union. And this is no different. So if he wants to communicate to the museum, there's nothing wrong with him speaking to the attorney that represented the case, who worked on the case, to communicate with the museum. Thank you. Thank you very much. Simple question about the famous check. Does the record indicate what your client did with it? It does not indicate, but he did not deposit the check. I know that, but I'm just curious, where is it? The actual physical check. The actual physical check, I believe, is in his possession, but I might be mistaken on that. But he'd never deposited it to the bank. He had several other benefits. I mean, it's not in the record, but it would be if it went back, I suppose. But he was supposed to be in health care, and he was also supposed to be continued in the retirement system. Do you know if he acquired additional retirement credits with regard to the payments that were made to him? As I mentioned before, I'm not aware, besides the check, I'm not aware of any other benefits. You know, if he in any way used any of the health care benefits, then he's ratified the agreement and he's out. You know that, don't you?  Part of the provision was that they were to provide him with continued health care. And I don't think he had to do anything. I think they just kept him, it seemed to me, from the agreement they keep in the system. If he went into the doctor and he used the health care that he had from the MET, it would seem to me he's ratifying the thing. But that's not in the record, so we don't have to worry about it. Fair enough. Thank you, we'll reserve decision. In the case of Williams versus Riley, we are taking that on submission. In the case of Aniel versus Rest Cap Liquidating Trust, we are taking that on submission. The case of Elliot Leach versus the Department of Education, we're taking it on submission. That's the last case on calendar. Please adjourn court. Court stands adjourned.